Case number 22-5318, Lake Region Healthcare Corporation, Affiliates versus Xavier Becerra, Secretary of Health and Human Services. Mr. Collins for the Affiliates, Mr. Overbold for the Affiliates. Mr. Collins, good morning. Your Honor, may it please the Court, I'm Sven Collins, I represent Lake Region Healthcare. Congress carved out exceptions to the prospective payment system for hospitals like Lake Region that serve isolated rural communities. The exception here is intended to provide additional payments to sole community hospitals when their inpatient volume uncontrollably drops by 5% or more, all the while having to maintain the full suite of hospital inpatient services throughout the year around the clock. Lake Region's inpatient volume dropped by over 16%. That's nearly one-sixth in 2013, and thus the statutory protection required the Secretary to provide additional payments to fully compensate Lake Region's fixed costs, including the reasonable cost of maintaining its necessary core staff and services around the clock throughout the year. The Secretary claims he could fulfill that command equally with a payment of zero or with a payment of $2 million. Zero if he treats the statutory discharge payments received throughout the year, if they're known as DRG payments, that Lake Region got as having only compensated Lake Region's fixed costs. Two million if he uses a method that he acknowledges the statutory requirement that the discharge payments were also intended as compensation for Lake Region's total payments, essentially robbing Lake Region of its variable cost payments to satisfy the obligation to reimburse the unreimbursed fixed costs. As we've briefed, there's all sorts of reasons why this apples-to-oranges method is invalid, but I'd just like to focus on four points. Number one, Congress intended the volume decrease protection as an exception to prospective payment and an add-on to the prospective payment system. The statute specifically says the Secretary shall provide such adjustment to the payment amounts. Those are the regular DRG rates, and the Secretary's regulation echoes this in its title, which is additional payments to sole community hospitals. Yet the Secretary, in his brief, incorrectly focuses on the ordinary prospective payment system goal of driving efficiency and cost savings, not the intended added protection. The second point... Can I just ask, statutory scheme requires disaggregation DRG payments into a fixed cost component, right? And statute is silent on how to do that. It seems that's the tough point for you. They have a method for doing it, which says, you know, assume at first the DRG is compensating fixed costs and then for variable. Not a great method, but how do we get over the statutory silence? Well, you're correct that the statute does not designate, you know, how to apportion and the DRG payments were created using average costs for all hospitals. That's all 100% understood. The problem is, I mean, there's various methods to allocate the DRG payments, and there's one method that is clearly violates the statute, and that's the method that the Secretary chose, which is to designate 100% of the payments to the hospital's fixed costs. The Secretary admits this on page 24 of his brief that under his apples-to-oranges method, the entire DRG payment should be considered compensation for the hospital's fixed costs. And here, the Secretary reallocated 99% of Lake Region's DRG payments to its fixed costs. And what that meant is for 99% of the patients that it had treated throughout the year, Lake Region got nothing for the costs it incurred for providing necessary drugs, medicine, medical supplies, food, laundry, and similar costs that the contractor deemed variable. The statutory scheme cannot be read to take away and pay nothing for hospital's variable costs. So, the Secretary developed, there's all other methods to allocate the DRG payment, one of which is in the Secretary's regulation from 2017 going forward, and similar to the Provider Reimbursement Review Board's method. That's a reasonable way to grapple with the statutory scheme and provide an allocation. Another reasonable method is the method set forth in the hospital's manual as the Secretary repeated in the Federal Register and in its notice to the public about what the method is. That's what you call apples-to-apples, something they call TOCO. Correct. I mean, that one seems pretty bad, too. That one's going to compensate, excuse me, that one's going to compensate for variable costs as well as fixed. Well, Your Honor, and that, I understand the District Court, that gave the District Court pause. Like, how can what this manual actually says, how can what the Federal Register actually says, which is the adjustment is the difference between the payments, the entire difference between the payments and the costs, and the hospital receives along some difference, the District Court surmised, well, that must mean some inappropriate payment of variable costs. And the answer to that is the manual actually tells you how to, the manual has a method that reasonably addresses the variable cost component, and that is it defines fixed costs. This is the Secretary's definition in the manual, also in the original regulation preamble. Fixed costs are those of which management has no control, and in a hospital setting, many costs are neither perfectly fixed nor variable, they're semi-fixed, and semi-fixed costs are those for items and services that are essential for the hospital to maintain operation, but also vary somewhat with volume. And then the manual goes through two, two and only two ways in which you address, you adjust the total cost figure, and in an effort to eliminate costs that are within the hospital's And the first is elimination of staffing costs that are more than the fixed staff, the core staff that are required. Those are netted out, and the manual tells contractors precisely what to do in that situation, which is to take them out of the cost report, rerun for a new total cost figure, which, quote, that is the basis for the payment adjustment. And then the second adjustment is a hospital is limited to its lower of last year's costs inflated or the current year's costs, and you might ask why is that? Well, the manual explains the reason for this. The hospitals assumed to have budgeted in the year in which it had a decrease based on prior utilization and have had insufficient time in that year to make significant reductions in costs. In other words, the hospital's costs in the reduction year are presumed to be mostly fixed and semi-fixed. And with those two adjustments, the manual, the secretary's judgment in the manual was that reasonably gets at costs that are within the hospital's control, and thus, as the secretary defined it, variable costs. So in that method, 100% doesn't go to variable costs. Some portion goes to variable costs, but it at least is an effort to grapple with it. In contrast, the secretary's apple-to-orange method makes no effort to account for the fact that the DRG payments are supposed to pay variable costs. The second thing I wanted to bring up is that here the secretary says that two methods are well, actually, they're mutually incompatible. The same exact cost figures, fixed variable, the same exact payments yield radically different outcomes. Two million, and if two million is necessary to compensate and does not overcompensate Lake Region, then zero here. The point we were discussing a moment ago about taking all of the payments for fixed costs, providing zero for variable costs, the hospitals, many other hospitals, it was 99% Lake Region case, but in many other hospitals' case, it was zero, literally zero. Many of the Amici hospitals and the hospital in the Unity Healthcare case. Another point that I want to just make, hopefully make clear, it's hopefully made clear by the materials the secretary published, the manual does not just set a cap. The manual tells you precisely how to set a method. And the secretary changed that, the secretary changed the method, and the apples-to-oranges method is a change from the regulation. It imposes a lower cap, not fixed, not total costs and DRG payments, fixed costs and DRG payments. So the secretary has clearly changed the regulatory tax without notice and comment. And regardless of whether the secretary is correct or not in terms of the manual, did it set a clear policy and dictate how they're to be calculated, the secretary admits that it had no definition, no formula until 2017. And that means the secretary could not either establish, and no court analyzed, establish or change the method. And the secretary first established the apples-to-oranges method in adjudication, not notice and comment rulemaking, so that violates notice and comment. I see I'm out of time. Before you sit down, can you tell me, your client is Lake Region Healthcare? Yes, your honor. What's the, is that related to Lakes Regional Healthcare? It is not, your honor. They're two separate corporations? Yes, there's a lot of lakes in the upper Midwest. But yeah, that's there in Fergus Fall, and it's not the same entity or related at all. We'll give you a couple minutes to reply. Thank you. Thank you. I'd like to start with the disaggregation question that my friend started with. The hospital, in this case, did not allocate the DRG payments that Lake Region received to its fixed costs. It just treated them the same way that the statutory scheme does, as undifferentiated payments that a participating hospital receives for providing inpatient care to Medicare patients. That's entirely consistent with the governing statutory scheme, as well as the regulation in place at the time of the fiscal year for which this volume decrease adjustment was zero. Your method treats the DRG payments as being 100% for fixed costs. It doesn't allocate them to fixed costs or variable costs. It just treats them as the payment the hospital receives for providing inpatient care. The statute does not require disaggregation. Nothing in the statute talks about disaggregating the payments. The statute says you have to fully compensate the hospital for fixed costs. For fixed costs, and it also provides that the payment the hospital receives is this DRG payment, which is not calculated on the basis of fixed costs or variable costs. It's calculated based on these historic average operating costs from the 1980s, which wasn't sort of calculated in the first instance on the basis of some portion is fixed, some portion is variable. In the same way that this court addressed in Appalachian Regional. The adjustment payment just reflects an arithmetic subtraction. You start with the hospital's fixed costs, and then you subtract out. You have to figure out unreimbursed fixed costs, and you do that through the DRG payment. It's in order to determine unreimbursed fixed costs. You have to figure out how much of the DRG payment is attributable to fixed and how much is attributable to variable. That's unavoidable. Your method just says we'll treat it as compensating for fixed. Well, nothing about the statute requires this sort of disaggregation, and in particular, I mean, this scheme was adopted in the 80s to move away from this sort of dollar for dollar reimbursement. Statute requires calculation of unreimbursed fixed costs. It requires such adjustment as may be necessary to fully compensate for fixed costs. It does not provide a basis for disaggregating the DRG payments. It's a little more, but you have to figure out unreimbursed, right, because there are two payments. There's the DRG payment on the front end, and then there's the adjustment. You have to conclude whether an adjustment is necessary. That's what it says, as may be necessary to fully compensate for fixed costs. And if you're provided an undifferentiated payment, but again, like in Appalachian Regional, it's not broken down into particular services, particular cost categories. It's reasonable to treat it as compensation for fixed costs. You know, the statutory provision it issued, it doesn't mention variable costs anywhere. Fixed costs is only mentioned in this adjustment provision. The DRG scheme is supposed to compensate hospitals, you know, a reasonably efficient hospital is supposed to get whatever they're supposed to get, right? It builds in what you would expect costs to treat a patient for a particular ailment, right? It comes in with the heart attack and you get whatever, $10,000 for treating the heart attack. It's a fixed payment generally based on historic average operating costs, and then with this sort of adjustment. And you think it's reasonable to view that payment as not compensating for any of the variable costs, any? It's reasonable. The hospital incurs treating the guy who comes in with the heart attack? It's reasonable for the agency not to sort of affect an allocation that the statute does not direct. And the one point I want to make, you know, the plaintiff argues that the agency has changed its position in this regard, but no one was arguing that there was this previous practice of disaggregating the DRG payments into fixed and variable cost categories and that I mean, going back to the 1987 regulation, when it's talking about the cap, what you're subtracting that is the entirety of the DRG payments. It wasn't until this series of review board decisions in 2014, where they started looking to the proxy of a hospital's own fixed cost ratio, that any sort of effort was made to disaggregate the DRG payments in that way. And it's entirely reasonable when the agency's first presented with a sort of rough proxy, which I think everyone agrees, it's not, this is not reflective of the actual fixed and variable cost categories that might have gone into the historical calculation of the DRG payments in the 1980s. This is just hospitals own fixed cost ratios, which might or might not be representative. It's reasonable for the agency not to sort of adopt that in the first instance, absent sort of a statutory or regulatory basis for doing so. And instead, again, treating the payments as the statute does, as it is undifferentiated compensation to a participating hospital for providing inpatient care. Is it, am I correct if I, if I understand this, that the higher in the old system, not the one that's in place now, that the higher the variable cost would be, the more likely the hospital would receive this compensatory payment. And the higher the payment would be. I think to Rudolph, it would be the opposite. I believe that the higher costs, the higher a hospital's fixed costs are, the more likely those fixed costs might exceed its DRG payments. And to the extent it has not sort of. No, I'm not, I'm not talking about the system where you disaggregate, talking about the system where you take a look at the DRG payments and you take a look at what the costs were. If the, if you have to disaggregate and the higher the variable costs would be, then the fixed costs would not necessarily be taken or compensated for. Well, under the method, the administrator employed here, the fixed costs, which are about 72%. And in this case, it does include all the hospitals, semi-fixed costs as well. To the extent the hospital can show their fixed or semi-fixed, then they're eligible for compensation. So the higher that number is, I think the more likely it is that that exceeds the DRG payments that a hospital has received. That would mean that the lower the variable costs would be. I think that's the percentage of the total payments. I think that's right. If I'm understanding, I mean, the lower the variable costs as a percentage, the more likely you might receive an adjustment. I mean, it depends on what the DRG payments are, what the total number is. Whereas under this system, if you have to use the hospital's own fixed cost ratio as the proxy for sort of calculating it, the hospital that does have higher variable costs for whatever reason, that results in more of the DRG payments being treated as allocated to variable costs, even though that doesn't actually track how the DRG payment was in the first instance. Let me give you a numeric example. I hope this doesn't get too complicated, but I'll try to do it slowly. So let's say there's a hospital, perfectly efficient, they're well run, they're average, you know, what CMS expects in every respect. And they have total costs of 100 fixed or 80 variable or 20. They're right on target. And so their DRG payment for the year is 100. Okay. Next year, they have a 20% volume decrease. Pretty significant, right? If not catastrophic, it's four times the trigger. Fixed costs are fixed, so they remain at 80. Variable 20% decrease, they go down from 20 to 16. So their total costs are 96, if I have my math right, but only 80 are fixed. The DRG is going to go down 20%, right, from 100 to 80. Under the Secretary's method, their new DRG is 80. Their fixed costs are still 80. They're going to get zero compensation, notwithstanding a 20% decrease in volume. It just seems hard to square in a scheme that is designed to deal with this problem of these rural hospitals, and they're subject to these volume swings, and they have these high fixed costs. And that's the problem Congress is addressing. I mean, I think the example generally tracks one of the amicus brief offered. And I think they presented an even third method for determining whether essentially the hospital had appropriately reduced its variable costs proportionate to the share. And that might be reasonable. And going forward from 2017, the Secretary adopted another reasonable approach to remove any possibility. Well, it's a version of finding a way to disaggregate these DRG payments that the statute does not provide, that the regulations before 2017 did not provide a basis to doing so. There are reasonable ways to further ensure that there's no possibility of any possibility of lack of full compensation, as the 2017 rule explains. But it's also reasonable for the administrator to look at a hospital that has received payments that fully total its fixed costs under a scheme in which the DRG payments are not necessarily, are expressly not designed to mirror the dollar-for-dollar reimbursement of the old scheme. And a statutory direction to make sure that fixed costs are compensated obviously implies that there's no similar requirement for variable costs. When a hospital has received payments totaling its fixed costs, it is reasonable for the agency to conclude that the statutory directive is met in that situation. When CMS prospectively sets the DRGs, do they consider variable costs? Well, I mean, this gets to the sort of question, it's a historical, it's a historical, I don't think there's any way in which, at least I'm not aware that in setting these based on these historical, you know, 1980s costs, certainly costs that a hospital might have been treated, would have treated as variable, go into that calculation. Setting the amount designed to compensate a well-run hospital for all the costs they have to incur to treat patients. But you don't think they're accounting for variable costs? Certainly, there's no direction that the variable costs and the fixed costs both have to go into the DRG payment. Again, variable costs is not mentioned anywhere in this provision. And even then, if you have sort of some aspect of the payment historically included something that that hospital would have treated as variable. I mean, variable costs vary across hospitals, they can vary for a particular hospital across time. That doesn't provide a basis for sort of disentangling this payment that this court has recognized is extremely difficult to disentangle given the move away from a dollar-for-dollar reimbursement scheme to this average payment that is expressly intended to have hospitals eat the excess when they don't provide, when they provide an inpatient care and their costs exceed the average amount. Thank you. Mr. Collins, why don't you take two minutes? Just, Congress clearly included variable costs in the DRG payments, there's no question there. It's all costs, all operating costs. And so that's, that is baked into the payment structure. And counsel's mistaken when he says that this is completely different than the reasonable cost this is dollar-for-dollar, this is prospective payment, it's a new era, it's all efficiency, you get one payment, your individual circumstances don't matter. The statute on its face says, including the reasonable cost of maintaining necessary core staff and services. Now the question of, so that's inconsistent with the Secretary's interpretation here. The statute obviously doesn't direct how to apportion, and the Secretary has characterized it as a rough proxy, the method adopted in 2017 and what the board did. But the Secretary, of course, could have adopted a different proxy, but it needs to be something that addresses the reality that fixed costs, the variable costs are part of the DRG payment and simply can't fully compensate if you don't. Counsel mentioned the Appalachian case, and Appalachian was dealing with specifically cost-cutting measures, and Medicare shouldn't double pay the DRG payment, plus something that was already paid by a third party. So that's, the court construed there that was consistent with the PPS structure. We're not going to give hospitals an out when they receive a payment for a discrete item, that's part of the payment that comes to us. Here, we're dealing with an exception intended to provide more money, so I don't think Appalachian is good, other than the fact that it has the language about the DRG payments and the nature of them. It's not a good, you know, it's not a good source of, not good support for the Secretary. I mean, at the end of the day here, the question is, can the Secretary reasonably take money that it has already paid hospitals throughout the year for all of its discharges, money that was intended to pay for blood products, for medicine, for other costs the Secretary calls reasonable and necessary to care, take that money and say, oh, here you go, here it is again. That's your fixed cost payment. We submit it isn't for, both for substantive and procedural reasons. We ask that the court reverse the district court. Thank you. Mr. Collins, I didn't want to take your time, but I do have a question about the impact of travel nurse. Are they considered, how are they considered as costs? They must be very costs. And how, and if you know, how are they used by these small hospitals? Yeah, particularly during the pandemic, a lot of hospitals had to hire nurses, traveling nurses to fill in gaps, to provide additional care. And, you know, I'm not an accounting expert. I would think that those, those would be potentially deemed variable costs of a hospital because they can vary with utilization. If they're brought on to increase utilization, they could also fall in the category of necessary core staff if the hospital is lacking some of its core staff. But those are potentially the types of costs that secretary's method simply wouldn't pay. And it's no, you know, it's no coincidence that a lot of the volume adjustment payments that in the amici's cases and their records, in our case, are all during in the aftermath of the great financial meltdown when rural hospitals were struggling everywhere. And when the secretary is supposed to provide that protection, the secretary instead comes up with a new method that provides them nothing. Rural hospital is defined as a hospital that doesn't have another hospital within 30 miles? Yes, your honor. It's, it's rough. I think it's 35 miles and 30 road points. Yes, there's no other, there's no other hospital essentially within the geographic area to service Medicare beneficiaries. It's not necessarily a small hospital. It could be a very, very large hospital, right? Well, they can, they can vary in size, but typically they tend to be much smaller than hospitals that are located in urban areas under the prospective payment system. Their bed size is usually, you know, in the hundred range versus the five, 600 range. So they tend to be much smaller. And they also, you know, these hospitals are basically cornerstones of their communities. There is absolutely vital to the economic viability of remote rural areas as well. Okay. Thank you. Thank you. Thank you. Thank you.
judges: Henderson, Katsas, Randolph